# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD G. WEIMER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | 02: 08-cv-0412 |

## MEMORANDUM OPINION AND ORDER OF COURT

March 5, 2009

**I.     Introduction**

Plaintiff, Ronald G. Weimer, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final determination of the Commissioner of Social Security ("Commissioner"), which denied his application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

**II.    Background**

**A.     Facts**

Plaintiff was born on October 1, 1967, and was thirty-six years old at the time of his alleged onset date of disability. He graduated from high school and had past work experience as a

1

carpenter's helper, retail manager, construction laborer, manager of a cleaning service, mover, and television assembler.

Plaintiff alleges disability as of July 16, 2004, due to degenerative joint disease of the knee and various physical and mental afflictions caused by an alcohol-induced coma. The record reflects that Plaintiff has not engaged in substantial gainful work activity since July 16, 2004.

### B. Procedural History

Plaintiff filed an application for SSI/DIB on August 31, 2004, in which he claimed total disability since July 16, 2004. An administrative hearing was held on January 30, 2006, before Administrative Law Judge Douglas W. Abruzzo ("ALJ"). Plaintiff was represented by counsel and testified at the hearing. Melanie Weimer, Plaintiff's wife, and Eugene E. Hoffman, an impartial vocational expert, also testified at the hearing.

On April 13, 2006, the ALJ rendered an unfavorable decision to Plaintiff in which he found that Plaintiff retained the ability to perform a wide range of medium exertional activity which did not require the use of ladders, ropes or scaffolds and no more than occasional pushing and pulling with the lower extremities. The ALJ found that these limitations would not prevent Plaintiff from performing several of his past jobs and, therefore, determined that Plaintiff was not "disabled" within the meaning of the Act. The decision of the ALJ became the final decision of the Commissioner on February 22, 2008, when the Appeals Council denied Plaintiff's request to review the decision.

On July 1, 2008, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment.

Plaintiff contends that the ALJ erred in (1) his credibility determination; (2) his treatment of the opinions of Plaintiff's treating and consultative physicians; (3) his determination that Plaintiff did not have a severe impairment; (4) his determination that Plaintiff did not have an impairment that meets or equals a listed impairment; and (5) his characterization of Plaintiff's residual functional capacity ("RFC"). The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence. The Court agrees with the Commissioner and will, therefore, grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III. Legal Analysis

#### A. **Standard of Review**

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g)/1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999). The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). It consists of more than a scintilla of evidence, but less than a preponderance. *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1)

is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job. *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fourth step of the sequential evaluation process. In making this determination, the ALJ concluded that (1) Plaintiff and his wife were not credible witnesses; (2) the opinions of Plaintiff's treating and examining medical physicians were contrary to objective medical evidence contained in the record; (3) Plaintiff had degenerative joint disease of the knees, which was severe, but any additional impairments that Plaintiff had did not have more than a minimal impact on his ability to perform work-related activities and were, therefore, not severe; (4) the medical evidence of record did not contain the objective signs, symptoms, or findings of functional limitations necessary to meet or equal the severity of a listed impairment; and (5) Plaintiff had the RFC to perform past relevant work.

**B.     Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The

Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

       *1.*      *The ALJ properly determined that both Plaintiff and his wife were not credible witnesses.*

A plaintiff's subjective opinion about his own disability is entitled to credence if it is supported by the medical record. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I). *See Taybron v. Harris,* 667 F.2d 412, 415 n. 5 (3d Cir. 1981). It is the responsibility of the ALJ to determine the credibility of a plaintiff's statements about his or her own disability and to make findings on credibility. *See Dobrolowsky v. Califano,* 606 F.2d 403, 409 (3rd Cir. 1979); *see also Kephart v. Richardson,* 505 F.2d 1089 (3rd Cir. 1974).

Plaintiff argues that the ALJ improperly concluded that he and his wife were not credible witnesses. The record reflects, however, that the ALJ made a thorough evaluation of Plaintiff's credibility and also assessed the credibility of the testimony of Plaintiff's wife. The ALJ found as follows:

> [T]he the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible. . . .
>
> Claimant had no difficulty getting along with his attorney or others in the hearing room and he was able to respond to all questions asked of him in an appropriate manner with no overt lapses in concentration. The Administrative Law Judge also finds it noteworthy that the claimant was evasive in answering the questions posed by the undersigned during the hearing, (including evading questions regarding the cause of his coma in July 2004 and/or

what information his physicians had given him as to the cause of his coma) but was very
responsive to all questions posed by his attorney.

R at 16, 18.

Plaintiff also argues that the ALJ improperly discredited his self-reported activities of daily living. The ALJ determined that:

> The claimant's self-reported activities of daily living are inconsistent with an individual experiencing totally debilitating symptomatology. As was previously discussed, the claimant reported he is able to care for his personal needs, drive, watch television, read the newspaper, serf (*sic*) the internet, visit with family and friends, occasionally dine out at restaurants, "tinker" with small household repairs, and perform household chores such as cooking, dusting, mopping, vacuuming, washing dishes and doing laundry.

R. at 18.

The ALJ also found that Plaintiff's testimony regarding his alleged side effects from his medications was not credible. The ALJ noted that "the claimant had previously reported on a Daily Activities Questionnaire in September 2004 that he experienced no side effects from his medications; and there is no evidence that his medications have been frequently changed or the dosages altered due to side effects and/or ineffectiveness." R at 18.

Finally, with regard to Plaintiff's treatment history, the ALJ observed that:

> There is no evidence the claimant has been prescribed other treatment modalities, such as a TENS unit, back brace, or an ankle brace; and no medical source of record has referred the claimant to a pain management clinic notwithstanding his allegations of debilitating symptomatology. Finally, it is noted that claimant has not required aggressive medical treatment, frequent hospital confinement/emergency room care, or further surgical intervention for his condition since the cervical fusion in August 2003 notwithstanding his allegations of totally debilitating symptomatology.

R at 19.

Significantly, the ALJ also noted that the record contained substantial objective medical evidence which contradicted Plaintiff's subjective statements, *to wit:*

7

> The clinical and objective findings are also inconsistent with an individual experiencing totally debilitating symptomatology. Indeed, physical examinations by Dr. Gottron have consistently revealed no evidence of atrophy or weakness of the extremities; and in May 2004, a knee examination by Dr. Haffner revealed no evidence of instability, effusion or other abnormalities (Exhibits 8F, 9F). . . . Finally, it is noted that there is no diagnostic evidence of herniation, spinal stenosis, nerve root impingement or other degenerative/arthritic abnormality of the lumbar spine to substantiate the claimant's allegations of low back pain.

R. at 18.

Credibility determinations by an ALJ need only be supported by substantial evidence on the record as a whole. *Miller v. Commissioner of Soc. Sec.,* 172 F.3d 303, 304 n.1 (3d Cir. 1999). The Court finds and rules that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony was not credible.

The Court also finds that the treatment by the ALJ of the testimony of Plaintiff's wife was also appropriate as she reported Plaintiff's ailments and capabilities similarly to Plaintiff. *See Gilroy v. Astrue*, No. 2:07-cv-1582, 2008 WL 4790734 (W.D. Pa. Oct. 27, 2008).

2. *The ALJ properly evaluated the opinions of Plaintiff's treating and examining medical sources.*

Plaintiff argues that the ALJ did not give controlling weight to the opinions of his treating physicians and improperly disregarded the opinions of his consultative physicians. When considering medical evidence, an ALJ must consider "all medical evidence in the record and provide adequate explanations for disregarding or rejecting such evidence . . . ." *Akers v. Callahan*, 997 F. Supp. 648, 661 (W.D. Pa. 1998). Therefore, an ALJ may not reject a physician's findings before explaining why certain evidence has been rejected and other evidence accepted. *Terwilliger v. Chater*, 945 F.Supp. 836, 843 (E.D. Pa. 1996). In the case of a treating

physician, those findings must be given greater weight than those of a physician who has examined the claimant once or not at all. *Id.* The opinions of a treating physician may only be rejected on the basis of contradictory medical evidence. *Frankenfeld v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988).

Plaintiff contends that the opinions of William Musser, M.D.; Dennis W. Kreinbrook, Ph.D.; Daniel L. Haffner, M.D.; and Mark Gottron, D.O., are supported by substantial evidence in the record and that the ALJ erred in not giving these opinions appropriate weight. The Court finds this argument to be without merit. The ALJ reviewed all of the medical evidence in the record and found that the opinions of these doctors deserved only minimal weight, as their opinions were not consistent with other medical evidence in the record.

Dr. Musser performed one consultative physical examination on Plaintiff on November 2, 2004, less than one month after Plaintiff had been released from rehabilitation care for his alcohol-induced coma. The ALJ correctly determined that a single mental or physical evaluation one month removed from Plaintiff's rehabilitation release was not representative of Plaintiff's current functional capacity. Further, because Dr. Musser was not a treating physician, his consultative opinion was not entitled to significant weight.

Similarly, the consultative opinion of Dr. Kreinbrook, a psychologist, was based on a single examination which occurred on December 15, 2005. While Dr. Kreinbrook noted that Plaintiff scored a 50 on his Global Assessment of Functioning ("GAF"), the ALJ found that Plaintiff's GAF score was not consistent with his overall functioning. R. at 20. The ALJ further found that Dr. Kreinbrook's assessed limitations were based largely on Plaintiff's self-reported symptoms, which the ALJ found not entirely credible. R. at 20. Furthermore, the ALJ found that

Dr. Kreinbook's finding of serious impairment or limitation was also not consistent with the fact that Plaintiff had not undergone any type of psychiatric hospitalization or treatment by a mental health specialist. Significantly, however, Dr. Kreinbrook's mental status examination revealed that other than a depressed mood, Plaintiff had an appropriate affect, adequate memory, goal-directed thought processes, average intelligence, that Plaintiff denied conflict with most people in his life, and he had average social comprehension.

Dr. Haffner, an orthopedic surgeon, treated Plaintiff on two occasions. On May 19, 2005, Plaintiff reported to Dr. Haffner that he had left foot drop from nerve damage he experienced as a result of an alcoholic-induced coma. Dr. Haffner examined Plaintiff and found that Plaintiff was able to dorsiflex his ankle against resistance, was not wearing an ankle brace, and did not walk with a slapping gait. R. at 293. Dr. Haffner administered corticosteroid injections into Plaintiff's knees.

Plaintiff returned to Dr. Haffner two weeks later and reported that the injections were not helpful. Dr. Haffner examined Plaintiff and found that Plaintiff's condition was "pretty unremarkable" and that his gait seemed to be exaggerated. Based on the records of Dr. Haffner, the ALJ found that Plaintiff "could dorsi-flex his left ankle against resistance notwithstanding the claimant's allegations of a left foot drop." R. at 16.

Plaintiff further argues that the ALJ erred when he disregarded the 2005 statement of Dr. Gottron, in which Dr. Gottron opined that Plaintiff was physically disabled. Dr. Gottron was Plaintiff's primary care physician from October 2004 through May 2005. First, the ALJ noted that "Dr. Gottron declined to complete a residual functional capacity assessment of the claimant's ability to perform work-related activities." R. at 20. Second, the ALJ noted that the ultimate

finding of disability is an administrative finding reserved to the Commissioner and a statement of disability, even by a treating source, is entitled to no special significance. *See* 20 C.F.R. sections 404.1527(e)(1), (3); 416.927(e)(1), (3). As such, the Court finds that it was proper for the ALJ to rely on the objective medical findings of Dr. Gottron, rather than on the statement of Dr. Gottron that Plaintiff was disabled. The ALJ found that the objective medical findings of Dr. Gottron, including physical examinations, "consistently revealed no evidence of atrophy or weakness of the extremities." R. at 16.

Plaintiff also attempts to rely on the June 2006 statement of Dr. Gottron, which was not before the ALJ at the time of his determination. Evidence that was not before the ALJ is not admissible with respect to the Court's review of the disability determination by the ALJ. *See Matthews v. Apfel,* 239 F.3d 589, 594-95 (3rd Cir. 2001). This Court can only consider the evidence that was before the ALJ at the time of his decision.

For all these reasons, the Court concludes that the ALJ properly considered the opinions of Drs. Musser, Kreinbrook, Haffner, and Gottron, weighed the opinions of these physicians against the other medical evidence in the record, and properly determined that these opinions were not supported by substantial record evidence.

3. *The ALJ properly determined that the majority of Plaintiff's symptoms were not severe impairment(s).*

Plaintiff argues that the ALJ erred when assessing the severity of his physical and mental symptoms at step two of the sequential evaluation process.[1]  Specifically, Plaintiff argues that "the ALJ's determination that these impairments failed to pass step two's *de minimis* threshold is clearly not supported by substantial evidence.  While acknowledging pieces of this evidence in his denial of benefits, the ALJ improperly minimized their import." Pl.'s Br. 27.  The ALJ found that:

> The medical evidence also shows the claimant is status post a cervical fusion at the C5-6 level in August 2003 and that he has a history of left foot drop, a bilateral benign hand tremor and low back pain.  However, physical examinations by Dr. Mark Gottron, a treating physician, have consistently revealed no evidence of atrophy or weakness to the extremities; … the claimant was able to dorsiflex his left ankle against resistance not withstanding the claimant's allegations of a left foot drop…  [T]here is no diagnostic evidence of disc herniation, spinal stenosis, nerve root impingement or other degenerative/arthritic abnormality of the lumbar spine…  [T]hese impairments do not have more than a minimal effect on the claimant's ability to perform work-related activities and are therefore "non-severe". . . .
>
> Although the claimant was hospitalized in July 2004 due to an alcoholic coma with encephalopathy, central and extrapontine myelinolysis and critical illness myopathy … the claimant was afebrile, continent of bowel, and able to feed himself…  [T]he claimant has not required further inpatient hospital confinement … [and] has no difficulty getting along with others or following directions.

R at 16-17.

Based on these findings, the ALJ correctly found that Plaintiff's symptoms did not reach the necessary level of severity to warrant a finding of severe impairment at step two of the evaluation.

---

[1] Under the five step sequential evaluation at step two, the Commissioner must consider whether the claimant has a severe impairment.

12

However, assuming, *arguendo*, that Plaintiff's physical and mental symptoms did reach the necessary level of severity for a disability determination at step two, substantial evidence supports the conclusion that Plaintiff's impairments did not last or were not expected to last more than twelve months. The record reflects that Plaintiff's physical impairments, which developed in July 2004 as a result of his alcoholism, improved dramatically after his onset date. R at 16.

With respect to his mental impairment, the ALJ found that Plaintiff was able to interact appropriately at the administrative hearing and had no overt lapses in concentration. R. at 16-17. The ALJ also found that Plaintiff had the ability to drive, visit with family and friends, watch movies, and "tinker" with small household appliances. R at 17. Additionally, Plaintiff specifically denied having memory problems and Dr. Musser found Plaintiff's mood disorder did not appear to be limiting. R at 238.

The Court finds and rules that the ALJ correctly determined that substantial record medical evidence did not establish evidence of severe impairment(s), either physical or mental, and, further, the medical evidence of record did not establish that Plaintiff's symptoms lasted or were expected to last more than twelve months.

    4.    *The ALJ properly evaluated (1) whether the claimant's impairments met or equaled the listings, and (2) whether the combined effect of the claimant's impairments equaled a listing.*

In *Jones v. Barnhart*, 364 F.3d 501 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit instructed "that there be sufficient explanation to provide meaningful review of

the step three determination."² Plaintiff contends that the ALJ erred in finding that Plaintiff's knee impairment did not satisfy the requirements of listing 1.02, Major Dysfunction of a Joint. The Court finds Plaintiff's argument to be without merit.

The ALJ correctly noted that there was no evidence that Plaintiff's degenerative joint disease of his knees resulted in gross anatomical deformity. Additionally, there was no evidence that Plaintiff's knee impairment resulted in limitation of motion or other abnormal motion in his knees.

Plaintiff also argues that he had hepatic encephalopathy that met and/or equaled listing 5.05E for chronic hepatitis with hepatic encephalopathy. Listing 5.05E directs the Commissioner to evaluate hepatic encephalopathy under the criteria of Listing 12.02 for organic mental disorders. *See* 20 CFR pt 404, subpt P, app 1, §§5.05E. Disability under Listing 12.02 may be established by showing demonstration of loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one other listed condition resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

*Id.* Alternatively, disability under listing 12.02 may be shown through a medically documented history of a chronic organic mental disorder of at least two years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently

---

² Under the five-step sequential evaluation, in the third step the Commissioner must consider whether the claimant has an impairment that meets or equals the requirements of a listed impairment.

attenuated by medication or psychological support, accompanied by at least one other listed condition. *Id*.

Plaintiff argues that his symptoms meet the criteria established in Listing 5.05E and/or 12.02 and are supported by record evidence. He contends that:

> [he] underwent hospitalization secondary to seizures and alcohol induced illnesses, . . . [and] was subsequently diagnosed as having hepatic encephalopathy with asterixis [and] . . . chronic alcoholic liver disease with evidence of cirrhosis. . . . In October, 2004 plaintiff's problems included depression, anxiety, and sleep disturbance. . . .
>
> Dr. Musser reported that upon physical examination, Plaintiff's mood was depressed; and that his affect was depressed and withdrawn. . . . Dr. Kreinbrook reported that Plaintiff was experiencing disturbances, poor concentration ability, and limited coping ability. . . . Dr. Gottron reported that the brain damage from Plaintiff's past alcohol abuse caused Plaintiff to have cognitive problems. . . .
>
> Referable to the "B" requirements . . . Plaintiff maintains that given the consequences of his exertional impairments, chronic pain and psychiatric disorders are so inextricably linked that when taken together they result in "marked" limitations.

Pl.'s Br. 35-37.

Defendant responds that Plaintiff has not met the criteria established in listing 5.05E as the facts and evidence relevant to hepatic encephalopathy do not reveal any symptoms corresponding to listing 12.02 criteria. Rather, the evidence shows that Plaintiff's condition was both mild and short lasting.

The Court agrees with the Defendant. The medical evidence of record reflects that Plaintiff's alcoholic coma and resulting conditions were not severe and, as such, did not meet the criteria under listing 5.05E. Plaintiff relies upon medical and other evidence that properly was discredited by the ALJ. The ALJ determined that Plaintiff's alleged impairments were not severe and were not supported by objective medical evidence, and that the testimony of Plaintiff and his

15

wife with regard to his subjective complaints was not credible. The Court finds that each of these determinations is based on substantial evidence and leads to the conclusion that Plaintiff did not meet or equal the listings under step three.

     5.    *The ALJ properly characterized the Residual Functional Capacity of Plaintiff.*

Finally, Plaintiff argues that the hypothetical question posed to the vocational expert by the ALJ did not fairly set forth all of Plaintiff's limitations that were supported by the record. The "[t]estimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir. 1984). "The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs and the extent to which such jobs exist in the national economy." *Id.* Although "the ALJ may proffer a variety of assumptions to the expert, the expert's testimony concerning alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." *Id.; see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). If a hypothetical question does not reflect all of a claimant's impairments that are supported by the record, "the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987); *see also Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004); *Burns*, 312 F.3d at 123.

The ALJ posed the following hypothetical to the vocational expert:

> Please consider for me a hypothetical individual of the same age, education and work experience as the Claimant. This person is limited to no more than the medium range of exertion as that is defined under our regulations. This person must avoid all use of ropes, ladders and scaffolds. This person is limited to occasional pushing and pulling with the bilateral lower extremeties.

R. at 620. The hypothetical posed by the ALJ considered Plaintiff's degenerative joint disease of his knees, which was the only symptom the ALJ found to be supported by medical evidence.

Plaintiff argues that the ALJ erred in basing his decision on a hypothetical that did not adequately encompass all of Plaintiff's impairments and limitations. The Court disagrees. The ALJ relied on a hypothetical question that analyzed an individual of Plaintiff's age, education, and vocational background, and also set forth limitations based on Plaintiff's degenerative knee disease. The ALJ did not address any symptoms unrelated to knee pain in his hypothetical because he did not find Plaintiff to have impairments in any other areas. The Court finds that the hypothetical accurately portrays Plaintiff's impairments as reflected in the record.

Furthermore, in addition to the hypothetical posed by the ALJ, the following hypothetical was posed to the vocational expert by Plaintiff's attorney:

> Assume a Claimant of this age, with this prior work experience and this education background, at the sedentary level, who needs to alternate sitting and standing . . . Who is limited in his attention span and concentration, who needs an hour break during the day, who needs to be able not to read or comprehend instructions of more than a page, who requires routine, simple and repetitive work, who is not safe to be around moving machinery, unprotected heights, who has balance problems, who should not go up and down steps, climb ladders, stoop bend, crouch or crawl. . . Who has coordination or weakness problems with fine manipulation…and who has occasional articulation or communication problems related to recovery from aphasia.

R at 624-25.

In response, the vocational expert testified that jobs would also be available for this hypothetical individual . R at 625. However, notwithstanding the testimony of the vocational expert, the ALJ found that an individual who could not maintain concentration for more than fifteen minutes at a time would not be employable. R at 630.

The Court finds that the ALJ appropriately addressed all of Plaintiff's limitations which were supported by substantial evidence in his hypothetical. Thus, the testimony of the vocational expert, on which the ALJ relied, constitutes substantial evidence to support a finding that Plaintiff is not disabled. *Podeworny*, 745 F.2d at 218; *Wallace v. Secretary of Health and Human Serv.*, 722 F.2d 1150, 1155 (3d Cir. 1983).

## IV. Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a wide range of work at the medium exertional level.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

                                                               McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| RONALD G. WEIMER | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 08-cv-0412 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 5th day of March, 2009, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Ronald G. Weimer (Document No. 8) is **DENIED**;

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (Document No. 13) is **GRANTED**; and

3. The Clerk of Court is to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     E. David Harr, Esquire
       Email: Dharresq@aol.com

       Christy Wiegand,
       Assistant U.S. Attorney
       Email: christy.wiegand@usdoj.gov